STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1756

LAW INDUSTRIES, LLC

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE

Judgment rendered: **MAR 0 2 2020**

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C672689, Sec. 23

The Honorable William A. Morvant, Judge Presiding

* * * * *

| | |
|---|---|
| Kyle C. Marionneaux<br>Kara B. Kantrow<br>J.H. Hunter Odom, III<br>Baton Rouge, Louisiana | Attorneys for Plaintiff/Appellant<br>Law Industries, LLC |
| | |
| Kari A. Bergeron<br>David J. Shelby, II<br>Leah C. Cook<br>Baton Rouge, Louisiana | Attorneys for Defendant/Appellee<br>Board of Supervisors of Louisiana<br>State University and Agricultural and<br>Mechanical College |

* * * * *

**BEFORE: McCLENDON, WELCH, HIGGINBOTHAM, HOLDRIDGE,
AND LANIER, JJ.**

WILSON LANIER CONCURS
PMc by JEW McClendon J, dissenting in part with reasons assigned
JEW Welch J. dissents and assigns reasons.

**HOLDRIDGE, J.**

This appeal concerns the dismissal of a petition for a writ of mandamus filed by the plaintiff, Law Industries, LLC, seeking to compel the defendant, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, to pay the plaintiff the final balance due on a contract pursuant to La. R.S. 38:2191 of the Public Works Act. For the following reasons, we reverse the trial court's judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On January 23, 2017, the parties entered into a "Contract For Construction" for the plaintiff to furnish all materials, labor, tools, equipment, and other facilities necessary for the construction of the Beach Volleyball Team Shower Renovations for Dub Robinson Stadium at Louisiana State University and Agricultural and Mechanical College in Baton Rouge, Louisiana (the project). The original contract sum to be paid to the plaintiff for the project was $199,100.00. Under the terms of the contract, the project was to be completed within 60 days, with an initial completion date of April 13, 2017. The contract terms further stated that the plaintiff "shall be assessed Liquidated Damages in the amount of $500.00 per day for each consecutive calendar day which work [was] not complete[d] beginning with the first day beyond the completion time."

In May of 2017, the defendant approved a change order request, which increased the contract balance by $16,655.69, for a total of $215,755.69, and extended the completion date of the project to June 21, 2017. At that time, the defendant had paid the plaintiff $186,755.69, leaving an outstanding contract balance of $29,000.00. On June 20, 2017, the defendant sent the plaintiff a notice that it intended to assess liquidated damages to the plaintiff because the project would not be completed by the extended completion date. On July 14, 2017, the

2

defendant sent the plaintiff another notice that it intended to assess liquidated damages to the plaintiff because the project remained incomplete.

On September 19, 2017, a "Notice by Owner of Acceptance of Work" was filed with the Clerk of Court, stating that the date of substantial completion for the project was August 18, 2017, 58 days after the agreed upon extended completion date. The plaintiff obtained a clear lien certificate from the Clerk of Court and delivered it to the defendant on November 14, 2017, showing that no liens were filed within the statutory lien period for the project. On December 28, 2017, the plaintiff sent its final invoice to the defendant, which revealed that the total cost of the project was $246,461.72[1] and an outstanding balance of $59,706.03 remained. However, the defendant did not make a final payment to the plaintiff.

Thereafter, the plaintiff fax-filed a "Petition for Writ of Mandamus for Payment of Contract Funds" on August 16, 2018, seeking to compel the defendant to pay the full amount owed under the parties' contract in accordance with La. R.S. 38:2191.[2] In its petition, the plaintiff alleged that the change order requests that it submitted to the defendant increased the total sum of the project to $246,461.72, leaving a remaining balance of $59,706.03 to be paid to the plaintiff.[3] The plaintiff attached several exhibits in support of its petition, including the affidavit of Bryon J. Law, the authorized representative, manager-member, and registered agent of the plaintiff, who stated that the defendant failed to pay the plaintiff the balance due as of August 15, 2018. In further support of its position, the plaintiff submitted a memorandum, which stated that "even if there [was] a dispute over liquidated

---

[1] The plaintiff alleged that the total cost of the project was increased to $246,461.72 due to multiple change order requests that were allegedly approved by the defendant that totaled $47,361.72.

[2] The plaintiff timely filed its petition with Clerk of Court on August 24, 2018, in accordance with La. R.S. 13:850(B).

[3] The plaintiff attached to its petition an exhibit titled "Application and Certification of Payment" which revealed that the defendant allegedly approved an additional change order request totaling $30,706.03 for the project.

3

damages and/or change orders, [the defendant was] required to immediately pay the total amount due under the contract, under a Writ of Mandamus, and separately litigate the liquidated damages and/or change orders."

In response, the defendant filed a dilatory exception raising the objection of unauthorized use of summary proceeding on September 4, 2018.[4] The defendant alleged that the plaintiff's petition was an improper request for a mandamus proceeding under La. R.S. 38:2191 because there were no amounts due to the plaintiff under the parties' contract for the project. The defendant further alleged that the sum of $59,706.03 that the plaintiff sought to compel the defendant to pay consisted of: (1) two unapproved and unsigned change order requests totaling $30,706.03, which the defendant reviewed and rejected, and (2) the amount of $29,000.00 that was owed on the approved change order request that increased the contract amount. The defendant further alleged that it was entitled to withhold $29,000.00 in liquidated damages in accordance with the terms of the parties' contract. The defendant filed a memorandum in support of its exception and attached the affidavit of Amanda Mire, the Project Architect for the project. Ms. Mire stated in her affidavit that the plaintiff's claim was erroneous because there were no unpaid monies due under La. R.S. 38:2191. Ms. Mire further stated in her affidavit that the liquidated damages that the defendant assessed to the plaintiff represented the project's 58-day delay for substantial completion ($500.00 per day X 58 days = $29,000.00).

On September 6, 2018, the defendant filed an answer and affirmative defenses to the plaintiff's petition. On September 11, 2018, the plaintiff filed a memorandum in opposition to the defendant's dilatory exception raising the objection of unauthorized use of summary proceeding. In its memorandum, the

---

[4] The defendant requested expedited consideration of its dilatory exception raising the objection of unauthorized use of summary proceeding to be heard on the same date as the plaintiff's petition for a writ of mandamus.

4

plaintiff stated that it was no longer pursuing a claim for the unauthorized change order requests against the defendant totaling $30,706.03.[5] Instead the plaintiff requested that the defendant pay it the outstanding contract balance of $29,000.00, plus attorney fees, and interest under La. R.S. 38:2191(B).[6] That same day, the trial court held a hearing on the plaintiff's petition for a writ of mandamus and the defendant's dilatory exception raising the objection of unauthorized use of summary proceeding. At the hearing, the trial court confirmed, and both parties agreed, that the plaintiff's claim was limited to the outstanding contract balance of $29,000.00. Both parties also agreed that it was within the defendant's discretion to assess the plaintiff liquidated damages as per the terms of the parties' contract.

After considering the arguments from both parties and the evidence submitted, the trial court ruled from the bench and denied the defendant's dilatory exception raising the objection of unauthorized use of summary proceeding on its face and deferred it to the merits. The trial court further denied the plaintiff's petition for a writ of mandamus, dismissing the plaintiff's claim without prejudice. In its reasons, the trial court stated the following, in pertinent part:

> The Court: Okay. As I said at the outset, [La. R.S. 38:]2191(D) gives plaintiffs the right to bring this mandamus action. The question before the court is: is this something that a pure [ministerial] duty that they have absolutely no discretion and that they have to pay? Or if there's an element of discretion, does mandamus not lie? And this is something that I think ought to go to an ordinary proceeding. And as I read the statute, [La. R.S. 38:]2191(A) ... says: final payment shall be paid when they ... become due and payable under the contract. Which means, pursuant to the terms and conditions of the contract.

---

[5] This amount represents the total sum for the two allegedly unapproved and unsigned change order requests the plaintiff submitted to the defendant.

[6] Louisiana Revised Statutes 38:2191(B)(2) was amended in 2018, to state in pertinent part:

> (2) Any interest received by the contractor pursuant to Paragraph (1) of this Subsection, shall be disbursed on a prorated basis among the contractor and subcontractors, each receiving a prorated portion based on the principal amount due within [10] business days of receipt of the interest.

See 2018 La. Acts No. 566 (eff. Aug. 1, 2018).

The only way to give that provision of the statute any logical interpretation is to apply it, as written. There's been no disagreement by the parties that paragraph five of the contract provided for liquidated damages in the amount of $500[.00] per day.

***

Under the terms of the contract ... [the parties] agreed that $500[.00] a day [in] liquidated damages would be assessed for any day beyond the substantial completion date, which was June 21, 2017. The final substantial completion date was August 18, 2017. 58 days times 500 is ... [$]29,000[.00]. I think [the defendant] ha[d] the contractual right, under the contract, for that offset.

The trial court signed a judgment in accordance with its oral ruling on October 1, 2018. Subsequently, the plaintiff devolutively appealed.[7]

## APPLICABLE LAW

The payments for public contracts are governed by Louisiana Revised Statutes Title 38, Chapter 10. Specifically, La. R.S. 38:2191, provides:

A. All public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.

B. (1) Any public entity failing to make any progressive stage payment within [45] days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed [15%]. Any public entity failing to make any final payments after formal final acceptance and within [45] days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees and interest charged at [.5%] accumulated daily, not to exceed [15%].

(2) Any interest received by the contractor pursuant to Paragraph (1) of this Subsection, shall be disbursed on a prorated basis among the contractor and subcontractors, each receiving a prorated portion based on the principal amount due within [10] business days of receipt of the interest.

C. The provisions of this Section shall not be subject to waiver by contract.

---

[7] We note that the denial of the defendant's dilatory exception raising the objection of unauthorized use of summary proceeding is not at issue in this appeal.

D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be **subject to mandamus** to compel the payment of the **sums due under the contract** up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders. (Emphasis added.)

Pursuant to La. R.S. 38:2191(A), all contracting public entities "shall" pay all obligations, progressive stage payments, and final payments when they become due and payable under the contract. The use of the word "shall" in this provision unequivocally expresses a public entity's mandatory duty to fulfill its contractual obligations as they become due. Should a public entity fail to fulfill its mandatory duty under La. R.S. 38:2191(A), subsection D, again employing the mandatory "shall," subjects the public entity to a mandamus proceeding to compel payment of the sums due under the contract. Wallace C. Drennan, Inc. v. St. Charles Parish, 2016-177 (La. App. 5 Cir. 9/22/16), 202 So.3d 535, 544.[8]

Mandamus, codified in La. C.C.P. art. 3862, *et seq.*, is an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief. Hoag v. State, 2004-0857 (La. 12/1/04), 889 So.2d 1019, 1023. The Louisiana Supreme Court has routinely held that the only circumstances under which courts may cause a writ of mandamus to issue is where the actions sought to be performed by the public officer are purely ministerial in nature. Id. A ministerial duty, the performance of which may be required of the head of a department by judicial process, is one in which nothing is left to discretion. Id. A ministerial duty is a simple, definite duty arising under conditions admitted or proved to exist, and imposed by law. Id. at 1024.

---

[8] In Drennan, a contractor filed a petition for writ of mandamus under La. R.S. 38:2191 to compel St. Charles Parish to make a final progressive payment of $100,000.00 pursuant to a public works contract. The district court granted the petition. The Fifth Circuit upheld the grant of mandamus relief. Id. at 546.

7

Normally, a trial court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review. Town of Sterlington v. Greater Ouachita Water Company, 52,482 (La. App. 2 Cir. 4/10/19), 268 So.3d 1257, 1265, writs denied, 2019-0913 and 2019-0717 (La. 9/24/19), 279 So.3d 386, 931. However, in this case, we must interpret La. R.S. 38:2191(D) to determine what is meant by the statutory language that a public entity "shall be subject to mandamus to compel the payment of the sums due under the contract[.]" Where statutory interpretation is at issue and since the correct interpretation of a statute is naturally a question of law, we apply a *de novo* standard of review, and the appellate court is not required to give deference to the trial court in interpreting a statute. Commodore v. City of New Orleans, 2019-0127 (La. App. 4 Cir. 6/20/19), 275 So.3d 457, 465-66.

## DISCUSSION

The issue before this court is whether the trial court may deduct the amount of liquidated damages provided for in a public contract from the total amount due under that contract in a mandamus proceeding under La. R.S. 38:2191(D). This issue presents a question of the proper interpretation of La. R.S. 38:2191(D). Therefore, the following principles of statutory interpretation are applicable to this case. The function of statutory interpretation and the construction to be given to legislative acts rests with the judiciary. Livingston Parish Council on Aging v. Graves, 2012-0232 (La. 12/4/12), 105 So.3d 683, 685. The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. In re: Succession of Boyter, 99-0761 (La. 1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the

legislature.[9] Id.; see also Stogner v. Stogner, 98-3044 (La. 7/7/99), 739 So.2d 762, 766.

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; Conerly v. State, 97-0871 (La. 7/8/98), 714 So.2d 709, 710-11. Therefore, in construing a statute, an appellate court is bound to consider all parts together, giving effect to all parts, if possible, not construing as surplusage any sentence, clause or word, if a construction can be legitimately found which will give meaning to and preserve all words of the statute. Louisiana Oil & Gas Ass'n, Inc. v. Caldwell, 2015-0889 (La. App. 1 Cir. 2/18/16), 2016 WL 687144 *4 (unpublished).

Louisiana Revised Statutes 38:2191 was amended in 2011 by La. Acts, No. 184, (eff. Aug. 15, 2011) adding paragraph (D), wherein the legislature expressly provided that on a public works project, a contractor could utilize a writ of mandamus to collect against a public entity for unpaid contract amounts, which it was owed under a public contract, and which amounts had already been appropriated. In 2014, the legislature amended La. R.S. 38:2191(D) again, stating that a contractor could utilize a writ of mandamus to compel payment for sums due under the public contract, including any authorized change orders. See 2014 La. Acts, No. 487 (eff. Aug. 1, 2014). The amendment of La. R.S. 38:2191(D) provided that a mandamus proceeding could be used against a public entity to compel payment of the sums due under a public contract up to the amount that was already appropriated. St. Bernard Port, Harbor and Terminal District v. Guy

---

[9] Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the legislature's intent. La. R.S. 1:4; La. C.C. art. 2. Moreover, the legislature is presumed to act with full knowledge of well-settled principles of statutory construction. See Catahoula Parish School Bd. v. Louisiana Machinery Rentals, LLC, 2012-2504 (La. 10/15/13), 124 So.3d 1065, 1073.

Hopkins Construction Co., Inc., 2016-0907 (La. App. 4 Cir. 4/5/17), 220 So.3d 6, 13, writ denied, 2017-0746 (La. 9/15/17), 225 So.3d 1088.

The facts of this case reveal that the parties entered into a contract for the defendant to pay the plaintiff $199,100.00 for the project. The defendant approved a change order request for the project in the sum of $16,655.69, for a total of $215,755.69 to be paid to the plaintiff. When the plaintiff did not receive the remaining outstanding contract balance of $29,000.00 due under the parties' contract, it sought the issuance of a writ of mandamus to compel payment by the defendant in accordance with La. R.S. 38:2191.[10] However, the trial court found in its oral reasons that under the terms of the parties' contract, the defendant was entitled to liquidated damages in the amount of $500.00 per day beyond the project's substantial completion date. Therefore, the trial court denied the plaintiff's petition for a writ of mandamus, finding that the terms of the parties' contract allowed for the defendant to withhold payment from the full amount owed to the plaintiff based upon the liquidated damages that it assessed to the plaintiff. The trial court stated in its oral reasons that "there is an element of discretion by [the defendant], the public entity, as to: what's the amount due under the terms of the contract, payable under the contract once this liquidation damage provision is applied? So, I don't think that mandamus lies. I think that this is something that is going to have to be litigated in an ordinary proceeding."

The plaintiff argues that the trial court erred in dismissing its petition for a writ of mandamus because the trial court improperly interpreted La. R.S. 38:2191. Thus, the plaintiff argues that its petition for a writ of mandamus under La. R.S. 38:2191(D) was the appropriate remedy under the facts of this case. Specifically, the plaintiff argues that the trial court erred in holding that La. R.S. 38:2191(D)

---

[10] Louisiana Revised Statutes 38:2191(D) allows for a contractor to use a summary mandamus proceeding as opposed to an ordinary proceeding in order to collect the amount due under the contract up to the amount appropriated by the public body for that project.

10

allows the defendant to offset its payment to the plaintiff under the liquidated damages clause of the parties' contract. In support of its argument, the plaintiff relies on a Fourth Circuit case, Woodrow Wilson Construction LLC v. Orleans Parish School Board, 2017-0936 (La. App. 4 Cir. 4/18/18), 245 So.3d 1, 3, writ denied, 2018-0971 (La. 10/8/18), 253 So.3d 793, to argue that the defendant cannot unilaterally withhold liquidated damages pursuant to La. R.S. 38:2191. The plaintiff argues that La. R.S. 38:2191 provides for the enforcement of a contract by a writ of mandamus to compel a public entity to pay the outstanding balance. The plaintiff further argues that Woodrow Wilson provides that as a public entity, the defendant cannot rely on the liquidated damages clause in the parties' contract to avoid paying the plaintiff because the defendant is statutorily required under La. R.S. 38:2191(D) to tender final payment under a writ of mandamus.

We find that the plaintiff's reliance on Woodrow Wilson is misplaced, and we respectfully choose not to follow its ruling. In Woodrow Wilson, Orleans Parish School Board (OPSB) withheld payment from the contractor, claiming that the contractor owed liquidated damages for the delays in completion of the project. The contractor filed a petition for a writ of mandamus under La. R.S. 38:2191 to compel payment by OPSB. The trial court denied the contractor's petition for a writ of mandamus. The Fourth Circuit reversed the trial court's ruling and held that the contractor's alleged liquidated damages claim must be tried in a separate ordinary proceeding under La R.S. 38:2191. The Fourth Circuit based its interpretation of La. R.S. 38:2191 in Woodrow Wilson on another Fourth Circuit case, Hopkins, 220 So.3d at 13. In Hopkins, a construction company sought a writ of mandamus to compel the port, harbor and terminal district ("the Port") to pay a final money judgment that had previously been issued in an ordinary proceeding, from its breach of contract case against the Port. The trial court granted a writ of

11

mandamus. The Port appealed claiming that La. R.S. 38:2191 did not apply to a pre-existing money judgment and that the requirements of La. R.S. 38:2191 were not satisfied for obtaining a writ of mandamus. The Fourth Circuit affirmed the trial court's judgment. Hopkins, 220 So.3d at 19.

The trial court in Woodrow Wilson distinguished Hopkins because the contractor in Hopkins sought to retroactively apply the mandamus remedy to collect a previously awarded ordinary money judgment that the public entity refused to pay; whereas Woodrow Wilson sought the issuance of a writ of mandamus prospectively, without a pre-existing judgment or the delays that accompany ordinary relief. On appeal, the Fourth Circuit found this distinction "insignificant," reasoning that whether the amount due was adjudicated before the grant of a writ of mandamus is irrelevant to the Legislature's purpose under La. R.S. 38:2191 to ensure the prompt payment of obligations arising under public contracts. See Wilson, 245 So.3d at 8.

We disagree with the Fourth Circuit's finding in Woodrow Wilson that this distinction between the two cases is "insignificant" because whether the amount due was adjudicated is determinative of whether La. R.S. 38:2191(D) applies. Unlike Hopkins, wherein the plaintiff was able to utilize La. R.S. 38:2191(D) through a mandamus proceeding because a judgment setting the amount that was due under the contract had been previously rendered, the parties in Woodrow Wilson had not determined what amount was due under the contract for the project because the amount of liquidated damages, as provided for by the parties' contract, had not been set by the trial court. This court is bound to apply La. R.S. 38:2191(D)[11] as written, which states that a public entity shall be subject to a

---

[11] Louisiana Revised Statutes 38:2191(D) clarifies that with respect to progressive stage payments, any public entity failing to make such payments "arbitrarily or without reasonable cause" can be compelled to render such payment through a writ of mandamus. This Court has acknowledged that the appropriation requirement of La. R.S. 38:2191(D) is interpretive in nature

12

mandamus to compel the payment of any sums due under the contract. In this case, in order to determine the amount owed or "due" under the parties' contract, the trial court must determine the amount of liquidated damages, as is provided for in the contract, which is owed to the defendant.

Furthermore, we disagree with the trial court's interpretation of La. R.S. 38:2191 as applied to the facts of this case. Because the legislature has statutorily provided for a writ of mandamus as a remedy under La. R.S. 38:2191, the general rules for a mandamus proceedings do not apply. See Jazz Casino Company, L.L.C. v. Bridges, 2016-1663 (La. 5/3/17), 223 So.3d 488, 496-97. Therefore, the plaintiff was not required to show that relief was not available by ordinary means or that the delay involved in obtaining ordinary relief may cause injustice, as required by La. C.C.P. art. 3862.[12] See Wallace C. Drennan, Inc. v. St. Charles Parish, 2014-89 (La. App. 5 Cir. 8/28/14), 164 So.3d 186, 190; Quality Design and Const., Inc. v. City of Gonzales, 2013-0752 (La. App. 1 Cir. 3/11/14), 146 So.3d 567, 572. Because the plaintiff brought a mandamus claim under La. R.S. 38:2191, the trial court must determine the amount of the final payment due to the plaintiff under the parties' contract as mandated in La. R.S. 38:2191. Under La. R.S. 38:2191(A), "[a]ll public entities **shall** promptly pay all obligations arising under public contracts when the obligations become due and payable under the

---

as it promotes the Legislature's intent to provide for the prompt payment of contractor's. Hopkins, 220 So.3d 17.

[12] Louisiana Code of Civil Procedure article 3862 provides:

> A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice; provided, however, that no court shall issue or cause to be issued a writ of mandamus to compel the expenditure of state funds by any state department, board or agency, or any officer, administrator or head thereof, or any officer of the state of Louisiana, in any suit or action involving the expenditure of public funds under any statute or law of this state, when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.

13

contract." (Emphasis added.) The purpose of La. R.S. 38:2191 is to ensure the prompt payments of obligations arising under public contracts, as codified in section A of the statute, when said obligations become due and payable. Louisiana Revised Statute 38:2191(D) clarifies what conditions must be met to seek prompt payment and provides a procedure for accomplishing this end that is consistent with the general mandamus principles and Louisiana jurisprudence. In Wallace C. Drennan, Inc., 202 So.3d at 544, the Fifth Circuit explained the connection between these two sections of La. R.S. 38:2191, stating in pertinent part:

> The use of the word "shall" in this provision [Section A] unequivocally expresses a public entity's mandatory duty to fulfill its contractual obligations as they become due. Should a public entity fail to fulfill its mandatory duty under La. R.S. 38:2191(A), subsection D, again employing the mandatory "shall," subjects the public entity **to mandamus to compel payment of the sums due under the contract**. (Emphasis added.)

Accordingly, under our review, we find that La. R.S. 38:2191 mandates that the plaintiff may utilize a mandamus proceeding to order a public entity to pay any sums owed under a public contract. If the plaintiff elects to use a mandamus proceeding, the trial court must determine in a summary proceeding what sum is owed under the parties' contract, including the amount of liquidated damages payable under the contract's provisions.[13] If, after a summary hearing, the trial court determines that a sum is due to the plaintiff under the public contract, the trial court may order a judgment making the writ of mandamus peremptory. Thereafter, the public officer or entity shall pay the amount ordered. See La. C.C.P. arts. 3861 and 3866. Therefore, this matter shall be remanded to the trial court to determine the sum owed under the parties' contract in a mandamus

---

[13] "A writ of ... mandamus ... may be ordered by the court only on petition. The proceedings may be tried summarily[.]" La. C.C.P. art. 3781.

14

proceeding in accordance with La. R.S. 38:2191(D) and to enter a judgment accordingly.[14]

## CONCLUSION

For the above reasons, we reverse the trial court judgment that denied the plaintiff, Law Industries, LLC's, petition for a writ of mandamus for payment of contract funds and remand this matter to the trial court for a mandamus hearing under La. R.S. 38:2191 to determine the amount owed under the parties' contract. Costs of this appeal in the amount of $1,979.50 are to be equally divided among the parties.

**REVERSED AND REMANDED.**

---

[14] The plaintiff may elect to proceed by ordinary process if it chooses to obtain a judgment on any amounts that it can prove are owed under the contract regarding any alleged change order requests that were not subject to this mandamus proceeding.

15

LAW INDUSTRIES, LLC

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE

2018 CA 1756

FIRST CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

---

**WELCH, J., dissenting.**

*JLW*  I respectfully disagree with the majority's decision in this case. The majority's holding creates a split between the First and Fourth Circuit Courts of Appeal regarding the interpretation of La. R.S. 38:2191—a legal question—which needs to be resolved by the Louisiana Supreme Court.

The facts are not in dispute. Law Industries, LLC ("Law"), entered into a contract with the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") for the Beach Volleyball Team Shower Renovations for Dub Robinson Stadium at Louisiana State University and Agricultural and Mechanical College in Baton Rouge, Louisiana (the "project"). The initial contract price was for $199,100.00, with a sixty-day completion date of April 13, 2017. The contract contained a liquidated damages clause, which stated that Law "shall be assessed Liquidated Damages in the amount of $500.00 per day for each consecutive calendar day which work [was] not complete[d] beginning with the first day beyond the completion time."

Law presented five change order requests, which were approved May 3, 2017, some twenty days after the original complete date. These change orders increased the original contract price by $16,655.69, and extended the substantial completion date of the project to June 21, 2017. Law submitted additional change order requests, which were denied by LSU. As a result of LSU's denial on the change order requests, Law exceeded the extended substantial completion date by

1

fifty-eight days. LSU invoked the contract's liquidated damages clause and assessed $29,000.00 in liquidated delay damages.

LSU formally accepted the project on August 18, 2017. Law provided LSU with a clear lien certificate on November 14, 2017. At this point, under the terms of the contract as modified by the approved change orders, LSU owed Law $215,755.69, of which LSU had paid $186,755.69, leaving a balance due of $29,000.00.

However, two contractual disputes existed. First, LSU assessed Law $29,000.00 for fifty-eight days of liquidated damages for completion beyond June 21, 2017, the extended the substantial completion date of the project. Law claimed that LSU delayed the job and denied two change orders, requesting additional costs of $30,706.03, and requesting additional time for completion due to delays beyond Law's control.[1] Specifically regarding the delaying of the job, the owner of Law, Byron Law, testified:

> [LSU took] 38 days to process Change Order One on a 60-day project. They took 66 days to process Change Order Two on a 60-day project. That means that I was not authorized to do the change order work until after the 60-day project. They took 90 something days to process change orders.

Law made demand on LSU to pay the sum of $59,706.03, which included $30,706.03 for the unapproved change orders, and $29,000.00 for the remaining balance due under the contract. LSU refused to pay the unapproved change orders

---

[1] See Sections 8.3.1, 8.3.2, and 8.3.3 of the "2007 Edition of the General Conditions of the Contract for Construction, American Institute of Architects (AIA) Document A-201," which is incorporated into the contract executed between LSU and Law.

Section 8.3.1 provides that "[u]nless otherwise provided, Contract Time is a period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work."

Section 8.3.2 provides that "[c]laims relating to time shall be made in accordance with the applicable provisions of Article 15."

Section 8.3.3 provides that "[t]his Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents." (See LSU's trial exhibit 2, p. 22).

2

and claimed the assessed liquidated damages of $29,000.00 was an "offset" to the $29,000.00 balance due based on the contract.[2]

Law then invoked a mandamus action against LSU in accordance with La. R.S. 38:2191, which provides:

> A. All public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract. All progressive stage payments and final payments shall be paid when they respectively become due and payable under the contract.
>
> B. (1) Any public entity failing to make any progressive stage payment within forty-five days following receipt of a certified request for payment by the public entity without reasonable cause shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent. Any public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees and interest charged at one-half percent accumulated daily, not to exceed fifteen percent.
>
> (2) Any interest received by the contractor pursuant to Paragraph (1) of this Subsection, shall be disbursed on a prorated basis among the contractor and subcontractors, each receiving a prorated portion based on the principal amount due within ten business days of receipt of the interest.
>
> C. The provisions of this Section shall not be subject to waiver by contract.
>
> D. Any public entity failing to make any progressive stage payments arbitrarily or without reasonable cause, or any final payment when due as provided in this Section, shall be subject to mandamus to compel the payment of the sums due under the contract up to the amount of the appropriation made for the award and execution of the contract, including any authorized change orders.

---

[2] Louisiana Revised Statutes 38:2248, titled "Provisions for withholding payment; effect on liability of contractor or agency; punch list," allows the owner of a public works project to withhold payment of the contract price and retain payment for "punch list items" in certain instances; however, nothing in the record indicates that the $29,000.00 at issue in this appeal was either retainage or withholding.

3

A hearing on the mandamus action was held on September 11, 2018. At the hearing, Law withdrew its claim of $30,706.03 for the unapproved change orders and focused solely on the $29,000.00 balance due and payable under the contract. LSU maintained its position that its assessment of the $29,000.00 pursuant to the contractual liquidated damages clause was an "offset" to Law's claims, therefore, no money was due Law under the contract. After hearing the testimony and receiving evidence, the trial court reasoned:

> There is an element of discretion by LSU, the public entity, as to: what's the amount due under the terms of the contract, payable under the contract once this liquidation damages provision is applied? So, I don't think that mandamus lies. I think that this is something that is going to have to be litigated in an ordinary proceeding. And I really question the logic of whether the legislature would have intended that: well, you can pay me and sue me to get it back.

The trial court then dismissed the mandamus action, without prejudice, and noted its disagreement with the holding of the Fourth Circuit in **Woodrow Wilson Constr. LLC v. Orleans Par. Sch. Bd.**, 2017-0936 (La. App. 4th Cir. 4/18/18), 245 So. 3d 1, writ denied, 2018-0971 (La. 10/8/18), 253 So. 3d 793.[3]

The trial court was one hundred percent correct in finding that the imposition of liquidated damages involved a great deal of discretion. As testified to by Amanda Mire, the project architect for LSU:

> Q: Does LSU have to assess liquidated damages or is that a discretionary thing?
>
> A: It is discretionary. There are many factors that go into play as to whether or not LSU would assess liquidated damages. It's on a case-by-case basis.

---

[3] In **Woodrow Wilson**, the Fourth Circuit was tasked with determining whether the owner of a public works project could withhold final payment due under La. R.S. 38:2191 on the basis that the project was completed behind schedule, despite the fact that liability for the delays had yet to be adjudicated. Without making an express finding of whether or not final payment is due, the trial court denied the contractor's petition for a writ of mandamus. 245 So. 3d at 4. The contractor appealed, and the Fourth Circuit ruled that "having found that [the contractor] satisfied the requirements of La. R.S. 38:2191 ..., final payment became due and payable. Thus, [the public works owner] had a ministerial duty to issue final payment and had no discretion to withhold based on a separate claim against [the contractor]. Accordingly, the trial court erred in denying [the contractor's] petition for a writ of mandamus." 245 So. 3d at 8.

The trial court in essence ignored the word "shall" in La. R.S. 38:2191(A) and (D) and found that since LSU's "offset" claim was discretionary, the mandamus provision of La. R.S. 38:2191(D) was not appropriate. The trial court believed that LSU's "offset" claims should be resolved in an ordinary proceeding.

The majority on the other hand, after performing a statutory analysis to determine the legislative intent of La. R.S. 38:2191, holds that:

> La. R.S. 38:2191 mandates that the plaintiff may utilize a mandamus proceeding to order a public entity to pay any sums owed under a public contract. If the plaintiff elects to use a mandamus proceeding, the trial court must determine in a summary proceeding what sum is owed under the parties' contract, including the amount of liquidated damages that the contract provided for. [Footnote omitted.]

First, the majority's holding totally ignores the legislative intent of La. R.S. 38:2191, which is to provide for prompt payment of public contracts that are substantially completed and have been accepted by the owner, a clear lien verification has been provided, and the lien period has expired. This statute assures that the downstream persons or entities—the subcontractors, materialmen, and laborers—get paid. If these contractual requirements are met, the owner must make final payment due under the contract. There may be other contractual disputes between the owner, contractor, and other parties. However, to litigate the vast potential of contractual disputes in a summary proceeding and to determine what sums are owned under a public contract would thwart the purpose of the speedy resolution of contractual claims via mandamus that is envisioned by La. R.S. 38:2191.

Further, the majority's holding directly conflicts with the issuance of a writ of mandamus pursuant to La. C.C.P. art. 3862 and La. R.S. 38:2191(D). As pointed out by the majority, a mandamus is an extraordinary remedy to be applied where ordinary means fail to afford adequate relief. Courts only issue a writ of

5

mandamus to a public officer or entity[4] where the act is purely ministerial. A ministerial duty is one in which nothing is left to discretion. A ministerial duty is a simple, definite duty arising under conditions admitted or proved to exist, and imposed by law. See **Hoag v. State**, 2004-0857 (La. 12/1/04), 889 So. 2d 1019, 1024. Determining sums due under a contract is based upon factual determinations. Public officers or entities that are making decisions to assess non-liquated sums due under a public contract are by definition exercising discretion which is totally inappropriate to determine in a mandamus proceeding.

In this case, Law conclusively proved it was due $29,000.00 under the contract in accordance with La. R.S. 38:2191. LSU sought to "offset" the amount due by claiming liquidated damages under the contract. (Set-off, or to use the codal term, compensation, takes place by operation of law when two persons owe to each other sums of money and these sums are liquidated and presently due. In such a case, compensation extinguishes both obligations to the extent of the lesser amount.) La. C.C. art. 1893; see also **Am. Bank v. Saxena**, 553 So. 2d 836, 844 (La. 1989). As stated in 4 Aubry and Rau, *Civil Law Translations*, *Droit Civil Français*, § 326 (6th ed. La. St. L. Inst. 1965):

> The two debts must be equally liquid.... [A] liquid debt [is] one whose existence is certain and its quantity determined. A disputed debt is not liquid and cannot be admitted as susceptible of compensation unless the one who asserts compensation has in hand the proof of the existence of the disputed debt and is thus in a position to prove it promptly.

The setoff or compensation claim by LSU is an unliquidated claim, which as testified to by LSU's project architect Amanda Mire, involves discretionary assessment of liquidated damages on a case-by-case basis, and that amount was disputed by the testimony of the owner of Law, Byron Law.

---

[4] Louisiana Code of Civil Procedure article 3862 compels a public officer to perform a ministerial act, while La. R.S. 38:2191(D) allows a writ of mandamus to issue to a public entity. See also **Woodrow Wilson**, 245 So. 3d at 1.

6

Further, by claiming "offset" LSU conclusively acknowledged the underlying debt of Law. (Established jurisprudence provides that one who claims the defense of offset or compensation necessarily admits the underlying debt sued upon.) See **Tolbird v. Cooper**, 143 So. 2d 80, 85 n.3 (La. 1962); see also **Keiser v. Catholic Diocese of Shreveport, Inc.**, 38,797 (La. App. 2nd Cir. 8/18/04), 880 So. 2d 230, 235.

The factually closest case interpreting La. R.S. 38:2191 is **Woodrow Wilson Constr. LLC v. Orleans Par. Sch. Bd.**, 2017-0936 (La. App. 4th Cir. 4/18/18), 245 So. 3d 1, writ denied, 2018-0971 (La. 10/8/18), 253 So. 3d 793. In that case, the Fourth Circuit held that "[t]he purpose of La. [R.S.] 38:2191 is to ensure the prompt payment of obligations arising under public contracts, as codified in [sub]section A of the statute, when said obligations become due and payable." **Woodrow Wilson**, 245 So. 3d at 6, citing **St. Bernard Port, Harbor & Terminal Dist. v. Guy Hopkins Constr. Co.**, 2016-0907 (La. App. 4th Cir. 4/5/17), 220 So. 3d 6, 14, writ denied sub nom., **St. Bernard Port, Harbor & Terminal Dist. v. Got Hopkins Constr. Co.**, 2017-0746 (La. 9/15/17), 225 So. 3d 1088. By amending La. R.S. 38:2191 to provide for mandamus relief, the Fourth Circuit noted that the legislature "removed the element of discretion from a public entity...rendering...final payment due under the contract...." **Woodrow Wilson**, 245 So. 3d at 6, citing **St. Bernard Port**, 220 So. 3d at 13.

In **Woodrow Wilson**, the Orleans Parish School Board asserted a contractual defense (not a setoff) to withhold a final retainage payment because of claimed liquidated damages. As the Fourth Circuit correctly pointed out, "[a]sserting a separate claim for damages as a means to circumvent a mandamus action would render La. R.S. 38:2191 meaningless. **Woodrow Wilson**, 245 So. 3d at 7. Likewise, the Fourth Circuit correctly pointed out that contractual damage claims should be tried in ordinary proceedings:

7

> Liability for the delay in this case is a heavily contested issue and the resolution of which would delay determination of whether to issue a writ of mandamus. It is the protracted nature of ordinary proceedings that the legislature intended to avoid by amending La. R.S. 38:2191 to provide for mandamus relief. [Footnote omitted.]

**Woodrow Wilson**, 245 So. 3d at 7.

I fear the majority falls into grave error in holding that La. R.S. 38:2191 requires judicial determination of all sums owed (whether liquidated or not) under the parties' [public] contract, including the amount of liquidated damages (an unliquidated claim) in a mandamus proceeding. This approach merges the ordinary proceeding with the highly restricted mandamus summary proceeding and thwarts the legislative intent of La. R.S. 38:2191 for public entities to promptly pay monies owed under public contracts. I would remand to the trial court to issue the writ of mandamus in the amount of $29,000.00 and for a determination of the amount of attorney's fees, interest, and costs due. For these reasons, I respectfully dissent.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 CA 1756

LAW INDUSTRIES, INC.

VERSUS

BOARD OF SUPERVISORSOF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE

*********************************************

**McClendon, J., dissenting in part.**

While I agree with the majority that liquidated damages may be considered in this mandamus proceeding, I find a remand to determine the amount owed to be unnecessary.[1] Accordingly, I respectfully dissent in part.

---

[1] The record establishes $500.00 per day in liquidated damages for each day work was not completed beyond the completion date, as well as a 58-day delay for substantial completion, resulting in liquidated damages in the amount of $29,000.00 (58 x $500.00). The record further establishes approved change orders of $29,000.00, increasing the contract price by that amount. Thus, these two amounts offset each other.